IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL HOME LOAN BANK OF PITTSBURGH,<br><br>                     Plaintiff,<br><br>v.<br><br>J.P. MORGAN SECURITIES INC., J.P. MORGAN CHASE & CO., MOODY'S CORPORATION, MOODY'S INVESTORS SERVICE, INC., and THE MCGRAW HILL COMPANIES, INC.<br><br>                     Defendants. | No. 09 Civ. 2:09-cv-01421-LPL<br><br>Magistrate Judge Lisa Pupo Lenihan<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND** |

## I. INTRODUCTION

None of the Defendants' arguments support removal and this case must be remanded. First, Defendants argue that this Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), despite the fact that this is not a class action or even a "mass action;" Plaintiff Pittsburgh FHLB is a single corporate entity which purchased for itself the securities that are the subject of this lawsuit. Second, Defendants argue that this Court has original jurisdiction under Pittsburgh FHLB's charter. Pittsburgh FHLB's charter states that, among many other enumerated powers, it may "sue and be sued… in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1432(a). This language makes clear that this Court must be one of "competent" jurisdiction, i.e., with some independent basis for jurisdiction, not that the charter confers jurisdiction. Finally, the Defendants argue that this matter is "related to" a bankruptcy proceeding under 28 U.S.C. § 1334(b) and must be removed due to IndyMac's bankruptcy. But the Defendants admit that they have a *contingent* claim for indemnification in

- 2 -

the IndyMac bankruptcy, and the Third Circuit is absolutely clear: contingent liability is an insufficient basis on which to find a matter "related to" a bankruptcy proceeding. The removal is without merit. Simply put, the Defendants' motion imagines a suit different than this one, a rewritten charter for Pittsburgh FHLB, and a bankruptcy regime different from what has been established by law.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Federal Home Loan Bank of Pittsburgh ("Pittsburgh FHLB") filed suit on September 23, 2009 in the Court of Common Pleas of Allegheny County, Pennsylvania. The action seeks damages for the losses that Pittsburgh FHLB has sustained and will sustain as a result of Defendants' violations of state and federal law in connection with the sale of certain mortgage-backed securities. The Defendants are J.P. Morgan Securities Inc., J.P. Morgan Chase & Co., Moody's Corporation, Moody's Investors Service, Inc., and The McGraw Hill Companies, Inc., collectively referred to here as "Defendants."[1] IndyMac Bancorp, Inc. ("IndyMac") is not a defendant in this action.

Pittsburgh FHLB's complaint does not claim or seek class action status, names Pittsburgh FHLB as the sole plaintiff, and alleges six counts: fraud, negligent misrepresentation, violation of the Pennsylvania Securities Act of 1972, and three violations of the Securities Act of 1933: § 11 (15 U.S.C. § 77k), § 12(a) (15 U.S.C. § 77l(a)), and § 15 (15 U.S.C. § 77o). Half of the claims sound in Pennsylvania law—two common law and one statutory. The federal Securities Act claims plainly cannot be removed. The statute explains that these claims may be brought in state or federal courts:

> The district courts of the United States and the United States courts of any
> Territory shall have jurisdiction of offenses and violations under this title ...

---

[1]   J.P. Morgan Chase & Co. says that its actual name is JPMorgan Chase & Co.

concurrent with State and Territorial Courts …of all suits in equity and actions at law brought to enforce any liability or duty created by this title.

15 U.S.C. § 77v(a). But if the claims are brought in state court, they may not be removed to federal court. The Securities Act contains an unambiguous prohibition on removal (with the exception of certain situations not relevant in this case):

> **[N]o case** arising under this title and **brought in any State court** of competent jurisdiction **shall be removed** to any court of the United States."

*Id.* (emphases added).

On October 23, 2009 Defendants filed a Notice of Removal in the District Court for the Western District of Pennsylvania. In the "Procedural History" section, the Defendants inexplicably report information regarding some class action suits brought by other plaintiffs in other courts. While the Defendants allege that some of those class actions include some, but not all, of the same securities which are the subject of Pittsburgh FHLB's state court suit, the suits do not include any Pennsylvania state law claims. The other suits are obviously not part of the "Procedural History" of this case, which, as recounted above, is very short.

### III. ARGUMENT

This matter should be remanded to the forum selected by Pittsburgh FHLB, the Court of Common Pleas of Allegheny County, Pennsylvania. Defendants raise just three arguments in support of removal and they are without merit.

Section A below addresses the Defendants' first argument—that a statute governing class actions somehow applies to this suit by a single corporate entity. Section B addresses the Defendants' alternative to that stretched argument, namely that Pittsburgh FHLB's federal charter creates original jurisdiction in this Court and confers upon the *Defendants* the right to choose where Pittsburgh FHLB pursues its litigation. In Section C, Pittsburgh FHLB establishes

that contingent liability—where an indemnification claim arises only after an adjudication of liability in this case—does not meet the "related to" standard for exclusive bankruptcy jurisdiction. Finally, Pittsburgh FHLB would be entitled to legal fees after remand if, as shown here, the motion was not justified. This is addressed in Section D.

### A. This is Not a Mass Action under the Class Action Fairness Act.

Defendants bear the burden of establishing that the federal court has jurisdiction over class action lawsuits removed under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b). *See Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006). CAFA confers jurisdiction on federal courts in certain limited cases, but CAFA explicitly covers only "class actions" and "mass actions," the latter of which is defined to mean "any civil action ... in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact..." 28 U.S.C. § 1332(d)(11)(B)(i). This matter is not a class action, and the Defendants do not contend otherwise. They do contend that this is a "mass action," although as shown below, this argument is unsupportable.

#### 1. Pittsburgh FHLB is Not "100 or more persons."

The claims in this lawsuit are asserted on behalf of one single plaintiff—Pittsburgh FHLB. A "mass action" under CAFA requires "100 or more persons." 28 U.S.C. § 1332(d)(11)(B)(i). While Pittsburgh FHLB is indeed a corporation and all of its shares are owned by approximately 320 financial institution members, it is without a doubt a corporate institution in its own right. Under 12 U.S.C. § 1432(12), Pittsburgh FHLB's status as an individual corporate entity is unambiguous. The statute reads, in part:

> (a) The directors of each Federal Home Loan Bank shall, in accordance with such rules and regulations as the Board may prescribe, make and file with the Board at the earliest practicable date after the establishment of such bank, an organization certificate which shall contain such information as the Board may require. Upon

> the making and filing of such organization certificate with the Board, **such bank shall become, as of the date of the execution of its organization certificate, a body corporate,** and as such and in its name as designated by the Board it shall [have certain enumerated powers...]

12 U.S.C. § 1432(a) (emphasis added). As a simple matter of statutory analysis then, this suit does not involve multiple plaintiffs and it does not involve "common questions of law or fact" among multiple plaintiffs. A single plaintiff, itself a corporate entity, has brought suit for losses it has personally suffered relating to securities it alone has bought. The Defendants try to avoid this plain fact by arguing that the 320 shareholders of Pittsburgh FHLB are the real "parties in interest." But from CAFA's perspective, having member banks who are shareholders does not make Pittsburgh FHLB different from IBM, a company with hundreds of thousands of shareholders but which is not subject to CAFA anytime it brings suit.

### 2. Pittsburgh FHLB is the "True Party" in Interest in this Suit.

The Defendants' bizarre claim that Pittsburgh FHLB's member banks, the shareholders of Pittsburgh FHLB, are actually the parties in interest here—even though those entities are not even identified in the Complaint—is based on the findings of a single, inapposite case.[2] Misusing *Louisiana v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008), the Defendants claim that the "members are the true parties in interest," and thus are mass action plaintiffs within the meaning of CAFA. Notice of Removal, ¶ 14.[3]

---

[2] The capital structure, including stock ownership of Pittsburgh FHLB is described in its filings with the SEC, including its 10-Ks and 10-Qs. *See, e.g.*, the Form 10-Q for the period ending June 30, 2009, where at page 1, Pittsburgh FHLB states: "The Bank is a cooperative institution, owned by financial institutions that are also its primary customers." (http://www.sec.gov/Archives/edgar/data/1330399/000095012309033840/l37246e10vq.htm.)

[3] Among Pittsburgh FHLB's members is Chase Bank USA, National Association, based in Delaware. (http://www.fhlb-pgh.com/about-us/our-customers.html). Chase Bank USA is an affiliate of JPMorgan Chase & Co., one of the defendants in this case.

The *Louisiana* lawsuit was brought as a *parens patriae* action by the state Attorney General and it sought to recover, on behalf of more than 100 individual policyholders, damages suffered as a result of the insurers' and related parties' anticompetitive practices. *Id.* at 422. The removing defendants argued that the suit was in fact a "mass action." *Id.* at 423. The court determined that to be a "true party," the plaintiff must have a direct interest of its own in the outcome: "'Generally speaking, a party is a real party in interest when it is directly and personally concerned in the outcome of the litigation to the extent that his participation therein will insure a genuine adversary issue between the parties...' *Id.* at 428 (citations and internal quotation marks omitted). In *Louisiana*, the state had no such direct interest and the court held that the relief sought was for the benefit of certain consumers and not for the benefit of the state in its sovereign capacity. *Id.* at 428-29. As the court concluded, "Louisiana's argument that it is the only real party in interest is belied by the petition it filed in state court, which makes clear that it is seeking to recover damages suffered by *individual policyholders*." *Id.* at 429. Indeed, Louisiana's "petition [was] rife with statements that make clear that the policyholders are the real parties in interest in this action." *Id.* at 430.

Whether Pittsburgh FHLB is the true party in interest depends not on whether Pittsburgh FHLB has shareholders, but whether the wrong suffered is suffered by the corporation or by the shareholders directly. *See CCC Information Services, Incorp. v. American Salavage Pool Assoc.*, 230 F.3d 342 (7th Cir. 2000) (holding that because the defendant breached its contract to share information with plaintiff and not plaintiff's members, it is plaintiff that "feels the blow," and that whether "the members feel the blow through a trickle down effect is irrelevant to jurisdictional analysis..."). Using the phrasing from the *Louisiana* court, Pittsburgh FHLB has a direct and unique interest in the outcome of the case. The losses for which it seeks redress are on

its own books (Complaint ¶¶ 23, 61-62) and stem from securities it purchased and holds in its own name. (Complaint ¶¶ 21-22). That its shareholders may be affected through a "trickle down effect" does not mean they are the parties in interest. Indeed, the Complaint describes the indirect way in which the members are affected by the Defendants' conduct (the suspension by Pittsburgh FHLB of the payment of a dividend to the shareholders), but the prayer for relief seeks relief for Pittsburgh FHLB alone. Because Pittsburgh FHLB is an independent entity, with the rights and duties that accompany that status, and because Pittsburgh FHLB is the true party in interest in this case, there is only one Plaintiff in this action and CAFA cannot create a basis for removal.

### B. Defendants Cannot Remove under § 1441 based on the Pittsburgh FHLB Federal Charter.

Defendants cannot invoke federal jurisdiction based on Pittsburgh FHLB's federal charter. To hold that Pittsburgh FHLB's charter establishes automatic federal jurisdiction would violate notions of law and logic for three reasons. First, Congress intentionally acted to eliminate automatic federal question jurisdiction for federally chartered corporations when it passed 28 U.S.C. § 1349. Second, the provision from Pittsburgh FHLB's charter allowing it to sue or be sued in "any court of competent jurisdiction" fails to confer federal jurisdiction. And finally, Pittsburgh FHLB's right to sue in state court would be stripped if, by merely being a party to the case, federal jurisdiction were automatically granted regardless of the types of claims brought.

#### 1. Federal Jurisdiction based on the Pittsburgh FHLB Federal Charter is Barred under § 1349.

Congress specifically passed 28 U.S.C. § 1349 to eliminate automatic federal question jurisdiction over federally chartered corporations. Originally passed in 1925, and amended in 2006, § 1349 provides that "[t]he district courts shall not have jurisdiction of any civil action by

or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock."[4] In *Crockett Mortgage Co. v. Gov't Nat'l Mortgage Ass'n (Ginnie Mae)*, the plaintiff filed its claims in federal court by pleading that Ginnie Mae, by virtue of its federal charter, was subject to federal jurisdiction. 418 F.Supp. 1081, 1083 (D.C. Pa. 1976). Dismissing the action for want of jurisdiction, the court held that, under § 1349, federal incorporation may be the basis for federal jurisdiction only if the United States owns more than one-half of the capital stock. *Id.*

Here, the government neither owns the majority of Pittsburgh FHLB nor treats it as an extension of governmental services. Rather, Pittsburgh FHLB operates as a business corporation that falls squarely within the express language of § 1349 barring federal question jurisdiction over federally charted corporations.

    **2.    Federal Court is Not a Court of "Competent Jurisdiction" Over the Claims Asserted by Pittsburgh FHLB.**

Defendants' reliance on *American Nat'l Red Cross v. S.G.*, 505 U.S. 247 (1992) as grounds for federal jurisdiction over Pittsburgh FHLB's claims is misplaced. First, the Supreme Court in *Red Cross* held nothing more than that the Red Cross's "sue and be sued" provision "*may* be read to confer federal court jurisdiction" depending on the precise language of the charter. 505 U.S. at 255. *Red Cross* does not hold that another federal charter which mentions federal court is a grant of federal jurisdiction.

---

[4] This broadly phrased law was enacted after Congress twice acted to stem a flood of federal charter cases that were deemed to arise under federal law based solely on their charter. *See* Act of July 12, 1882, ch. 290, § 4, 22 Stat. 162, 163, amended by Act of March 3, 1887, ch. 373, § 4, 24 Stat. 552, 554-55 (eliminating federal question jurisdiction in cases involving banks); Act of Jan. 28, 1915, ch. 22, § 5, 38 Stat. 803, 804 (eliminating federal question jurisdiction over suits involving federally chartered railroad companies).

Second, the "sue and be sued" provision found in Pittsburgh FHLB's charter is materially different than the provision found in the Red Cross charter. In *Red Cross*, the charter provides that Red Cross could "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." *Red Cross*, 505 U.S. at 251. On the other hand, the Pittsburgh FHLB charter allows it "to sue and be sued, to complain and to defend, *in any court of competent jurisdiction*, State or Federal." 12 U.S.C. § 1432(a) (emphasis added). The presence of the phrase "in any court of any competent jurisdiction" is a material difference and a difference that this Circuit has recognized for decades. Consider *Lindy v. Lynn*, a Third Circuit case interpreting the same language at issue here. 501 F.2d 1367, 1368 (3d Cir. 1974). The relevant language came from 12 U.S.C. § 1702, which authorized the Secretary of Housing and Urban Development, in his official capacity, "to sue and be sued in any court of competent jurisdiction, State or Federal." *Id.* The plaintiff in *Lindy* sued the Secretary over a contract dispute that required the application of Pennsylvania state law. *Id.* The Circuit Court vacated the judgment of the district court for lack of jurisdiction, finding that the language "any court of competent jurisdiction, State or Federal"—which is identical to the language in Pittsburgh FHLB's charter—failed to confer federal jurisdiction. *Id.* at 1369. ("The same is true of 12 U.S.C. §1702, which makes the Secretary suable in his official capacity in a court which is otherwise of competent jurisdiction. Here it is clear that the district court is not otherwise of competent jurisdiction to entertain this lawsuit.").

Other decisions dating after *Red Cross* have similarly followed the Third Circuit's reasoning that "any court of competent jurisdiction, State or Federal" does not confer federal jurisdiction. For instance, in *Knuckles v. RBMG, Inc.*, the court held, after an extensive review of *Red Cross'* holding, that Fannie Mae's charter did not confer federal jurisdiction because Fannie

Mae's charter included the phrase "in any court of competent jurisdiction." 481 F.Supp.2d 559, 564-65 (S.D. W.Va. 2007). The court stated:

> [T]he phrase "any court of competent jurisdiction, State or Federal," found in Fannie Mae's charter, but not in the charter of the Red Cross, must be given effect. For the phrase "any court of competent jurisdiction" to have any meaning it should be read as differentiating between state and federal courts that possess "competent" jurisdiction, i.e., an independent basis for jurisdiction, from those that do not.

*Knuckles*, 481 F.Supp.2d at 563.

Whether Fannie Mae's "sue and be sued" provision confers federal jurisdiction has been grappled with by two other courts, both outside the Third Circuit and thus without *Lindy* as controlling authority. In 2006, a D.C. district court, reciting principles of statutory construction, correctly stated that Fannie Mae's "sue and be sued" clause—which is almost identical to the Pittsburgh FHLB "sue and be sued" provision—is "substantively different from that of the similar clause contained within the charter examined in *American National Red Cross*." *Fed. Nat'l Mortgage Ass'n (Fannie Mae) v. Sealed*, 457 F.Supp.2d 41, 44 (D.D.C. 2006). As the court observed,

> [T]o accept [the] argument that [Fannie Mae's provision] provides a blanket grant of federal jurisdiction to all actions in which Fannie Mae is a party, regardless of whether an independent basis for federal jurisdiction also exists, is to read the term 'of competent jurisdiction' entirely out of that 'sue and be sued' clause.

*Id.*[5] In a curious case two years later, a spirited 2-1 split decision of the D.C. Circuit held that Fannie Mae's charter conferred federal jurisdiction. *Pirelli Armstrong Tire Corp. Retiree Med.*

---

[5] The court also observed that adopting Fannie Mae's interpretation that the phrase "any court of competent jurisdiction, State or Federal," authorized suit in *any* state or federal court—whether or not an independent basis for jurisdiction existed—"would be grievously out of step with these myriad other statutes [Fair Labor Standards Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, and the Americans with Disabilities Act], none of which have been interpreted with such staggering breadth." 457 F.Supp.2d at 45. This is consistent with the ultimate holding that the chosen court must have an independent basis for jurisdiction.

*Benefits Trust v. Raines*, 534 F.3d 779, 788 (D.C. Cir. 2008). Factually distinguishable from this case, *Pirelli* involved shareholders filing derivative suits on behalf of Fannie Mae against Fannie Mae directors. *Id.* at 783. And unlike here, both parties agreed that federal jurisdiction was proper, and litigated their claims in federal court for four years. *Id.* at 784. On the appeal of a summary judgment order, the two-member majority, addressing the jurisdiction issue for the first time, agreed that jurisdiction was proper and then moved onto affirming the district court's decision to dismiss the protracted suit in its entirety. *Id.* at 783. While concurring in judgment (that the suit could not survive), the third panel member made a thorough and well-reasoned dissent on the jurisdiction issue. *Id.* at 795-800. Judge Brown stated that parties should not be able to "team[] up to manufacture jurisdiction;" that Congress's use of "competent jurisdiction" is meaningful and requires an independent source of subject-matter jurisdiction; and that interpreting *Red Cross* to mean that federal jurisdiction is automatically conferred simply because the "sue and be sued" provision mentions "federal court" is "silly" and "shirk[s the court's] responsibility to examine 'the ordinary sense of the language used [and] basic canons of statutory construction." *Id.* at 795-99.

Third, not only is the language in the Red Cross "sue and be sued" provision substantively different than the Pittsburgh FHLB provision, the legislative history of the Red Cross provision is materially different. The Red Cross "sue and be sued" provision was amended in 1947 to include the terms "State and Federal." *Red Cross*, 505 U.S. at 251-52. In holding that the Red Cross provision conferred federal jurisdiction, the Supreme Court observed that five years before Congress amended the Red Cross charter, the Supreme Court held that substantially similar language was sufficient to confer federal jurisdiction. *Id.* at 256-257 (comparing the Red Cross charter to the charter in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942)). The

Supreme Court, therefore, concluded that Congress was "on prospective notice of the language necessary and sufficient to confer jurisdiction" and, indeed, relied on the Court's previous holding when drafting the amendment. *Id.* at 252, 257. Here, Congress has amended 12 U.S.C. § 1432, relating to the Federal Home Loan Banks, multiple times since Congress was placed "on prospective notice of the language necessary and sufficient to confer jurisdiction," and has never changed the language to confer federal jurisdiction.

Finally, Defendants' ability to remove under § 1441 based solely on the Pittsburgh FHLB federal charter—and, importantly, *without* any independent basis—must be construed in light of the concerns that federal jurisdiction is strictly confined to congressionally set limits. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941). And, if federal jurisdiction is unclear, "all doubts should be resolved in favor of remand." *Johnson v. Roth,* No. 08-331, 2009 WL 2986607, at *2 (W.D. Pa. Sept. 15, 2009) (internal citations omitted) (Exhibit A) citing *Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1262 (3d Cir. 1994). Defendants bear the burden of establishing that removal is appropriate and must overcome the strong presumption against removal. *Id.*; *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108 (3d Cir. 1990). Given Congress's decision to eliminate automatic federal question jurisdiction over federally charted corporations in § 1349, and given Congress's decision not to expressly grant federal jurisdiction in the Pittsburgh FHLB "sue and be sued" provision, the Court must resolve this issue in favor of remanding Pittsburgh FHLB's claim to state court jurisdiction.

### 3.   FHLB Pittsburgh's Choice to Sue in State or Federal Court would be Unfairly Thwarted if Defendants are Able to Remove Based Solely on Its Federal Charter.

If this Court were to accept Defendants' unprecedented position that the Pittsburgh FHLB federal charter confers federal jurisdiction over *all* actions in which Pittsburgh FHLB is a

party—even those actions based solely on state claims or non-removable federal claims—Pittsburgh FHLB's choice to sue in Pennsylvania state court, which is expressly given to it in its charter, would be stripped. *See* 12 U.S.C. § 1432(a) (allowing federal home loan banks "to sue and be sued, to complain, and to defend, in any court of competent jurisdiction, *State* or Federal." (emphasis added)).

In contrast to *Red Cross* and most all other cases analyzing removal under the "sue and be sued" provision, Pittsburgh FHLB, the federally chartered corporation, is not attempting to file its claim in federal court or remove claims against it to federal court. Rather, the nonfederal Defendants are attempting to bootstrap their way into federal court using Pittsburgh FHLB's federal charter. In two cases, however, where a federally chartered bank brought a state court action and the defendant removed, the courts held that the defendants were not entitled to remove. In *Federal Land Bank of St. Louis v. Keiser*, 628 F.Supp. 769 (C.D. Ill. 1986), the Federal Land Bank brought a mortgage foreclosure action against defendant and the defendant removed. Remanding the case, the court held that because the plaintiff's claims were based on state law, and because § 1349 failed to confer federal jurisdiction to federally chartered corporations which functioned like private corporations, the defendant was inappropriately using the plaintiff's federal status to attempt to get itself into federal court. 628 F.Supp. at 770-773. The court further noted that the defendant had "no standing" to remove the case based on plaintiff's federal charter and it was plaintiff's prerogative to choose state court. *Id.* at 770.

Similarly, in *Federal Land Bank of Columbia v. Cotton*, 410 F.Supp. 169 (N.D. Ga. 1975), the federally chartered plaintiff filed an action in state court attempting to enforce a contract claim pursuant to state law and the defendant removed. Rejecting the defendant's argument that the action arises under the laws of the United States because the plaintiff was a

federally chartered corporation, the court held that "Congress has specifically declared that federally-chartered corporations cannot sue or be sued in federal court merely because they are federally chartered, unless the United States government owns 51% of the capital stock." *Id.* at 170 (citing 28 U.S.C. § 1349 as stated before 2006 amendment). The Court also noted that "[i]f plaintiff were considered an agency merely because it was chartered and regulated by the federal government, § 1349 would be rendered meaningless." *Id.* at 171.

Because Pittsburgh FHLB asserted only state claims and non-removable securities claims, similar to the federally chartered plaintiffs in *Cotton* and *Keiser*, Defendants should not be allowed to use the federal charter to trump Pittsburgh FHLB's choice of state court as its forum to litigate its claims.

### C. Pittsburgh FHLB's Claims are Not "Related to" the IndyMac Bankruptcy Proceedings.

The JPMorgan-related defendants claim that if they are found liable in this action they would have a right to indemnification or contribution from IndyMac, which is in bankruptcy. But Third Circuit law is clear that a contingent indemnification claim is not "related to" the bankruptcy of the indemnifying party. 28 U.S.C. §§ 1334(b), 1452(a); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3rd Cir 2004). An indemnification claim may be related to a bankruptcy proceeding once the right to indemnification has arisen, but so long as the right to indemnification is contingent on the outcome of another lawsuit, "related to" bankruptcy jurisdiction does not exist.

A proceeding is related to bankruptcy if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984). This "conceivably" test in *Pacor*, however, has its limitations. *Combustion Eng'g*, 391 F.3d at 227 (noting that the Third Circuit "clarified that the

potentially expansive language in *Pacor* was subject to limiting principles..."). Among these limitations, and most relevant here, is "whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit." *Id.* (citing *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3rd Cir. 2002)). Contingent liability is not sufficient for the exercise of "related to" jurisdiction. *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3rd Cir. 2002) (holding that the district court lacked subject matter jurisdiction because any potential indemnification and contribution claims against the debtor had not accrued and would not accrue until another lawsuit determined whether the defendant had liability and therefore a right to indemnification.)

Fatal to Defendants' attempt to remove is their own statement that the "Removing Defendants have *contingent* claims for indemnification and contribution against IndyMac arising from this action." Notice of Removal, ¶ 26. Indeed, the Third Circuit's decision in *Pacor* and *Combustion Engineering*—the only cases that Defendants cite for related-to jurisdiction—require that this Court remand this case to state court. *See Combustion Eng'g*, 391 F.3d at 232 (holding that "any indemnification claims against Combustion Engineering resulting from a shared production facility would require the intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for "related to" jurisdiction."); *Pacor*, 743 F.2d at 995 (holding that related-to jurisdiction did not exist because "there would be no automatic creation of liability," rather "[a]t best, [the proceeding] is a precursor to the potential third party claim for indemnification by [defendant] against [the debtor].")

A case particularly on point to this proceeding is *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003). In that case, the plaintiffs, holders of WorldCom bonds rendered worthless by WorldCom's bankruptcy, brought a state-court action

against the bond underwriters and issuer's accounting firm alleging failure to conduct adequate due diligence and asserting claims under Sections 11, 12, and 15 of the Securities Act. *Id.* at 748. The underwriter defendants removed the case and later filed a motion with the MDL requesting transfer to the Southern District of New York for consolidation with other securities actions involving the WorldCom bankruptcy. *Id.* at 749. The defendants argued that the existence of an indemnification agreement between them and the debtor WorldCom, whether it applied immediately or at some later point, supplied a basis for "related to" bankruptcy jurisdiction. *Id.* The court remanded the case to state court because "[a]ny indemnification claim asserted by the underwriter defendants against WorldCom [had] not yet accrued and would require another lawsuit before it could have an impact on WorldCom's bankruptcy." *Id.* at 753-54.

Without citing any statutory indemnity obligations or express agreements that would automatically give rise to indemnification, and because Defendants in fact admitted that any claims for indemnification and contribution against IndyMac are contingent, this Court lacks subject matter jurisdiction over Plaintiff's claims and should remand the proceedings to Pennsylvania State Court.[6]

### D.   Pittsburgh FHLB is entitled to fees upon remand.

An order remanding this action to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court need not determine that the defendants acted in bad faith in order to award costs and attorney's fees incurred as a result of seeking remand to state court. *Mints v.*

---

[6]   Because removal is not proper under 28 U.S.C. § 1452(a), Defendants' argument in ¶ 27 of their Notice or Removal that the bankruptcy removal statute controls over the anti-removal provision of § 22(a) of the Securities Act of 1933 is moot. *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003) (holding its decision to remand because the matter was not "related to" a bankruptcy proceeding was dispositive and that it did not need to consider the prohibition against removal contained in § 22(a) of the Act).

*Educational Testing Service*, 99 F.3d 1253, 1260 (3d Cir. 1996). In this case, costs and attorney's fees are warranted. Defendant's removal in this case, particularly its claims under CAFA, was not justified.

## IV.  CONCLUSION

For the reasons stated above, Pittsburgh FHLB respectfully requests that this Court order this matter remanded to state court and award Pittsburgh FHLB its fees and costs.

Dated: November 9, 2009

    Respectfully submitted,

    LYNCH WEIS, LLC

    /s/ William J. Wyrick
    Daniel P. Lynch
    PA ID No. 68280
    William J. Wyrick
    PA ID No. 70656
    501 Smith Drive, Suite 3
    Cranberry Twp., PA 16066
    (724) 776-8000 (Telephone)
    (724) 776-8001 (Facsimile)

    ROBINS, KAPLAN, MILLER & CIRESI LLP
    Thomas B. Hatch (MN 150939)
      *pro hac vice application pending*
    Jennifer L. McKenna (MN 295802)
      *pro hac vice application pending*
    Jenny Gassman-Pines (MN 0386511)
      *pro hac vice application pending*
    Katherine K. Bruce (MN 0388887)
      *pro hac vice application pending*
    800 LaSalle Avenue South, Suite 2800
    Minneapolis, MN 55402
    (612) 349-8500 (Telephone)
    (612) 339-4181 (Facsimile)

    *Counsel for Plaintiff Federal Home Loan Bank of Pittsburgh*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of November, 2009, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND was electronically filed with the Court using the CM/ECF system, which sends e-mail notification of such filings to the following counsel of record, using the following e-mail addresses indicated as being of record:

Samuel W. Braver, Esq.
samuel.braver@bipc.com
*Local counsel for Defendants J.P. Morgan Securities Inc., J.P. Morgan Chase & Co.*

Mark A. Willard, Esq.
mwillard@eckertseamans.com
*Local counsel for Defendants Moody's Corporation and Moody's Investors Services, Inc.*

Walter P. DeForest, Esq.
deforest@dkykb.com
*Local counsel for Defendant The McGraw-Hill Companies, Inc.*

In addition, copies were sent by electronic mail to the following counsel at the following addresses:

Floyd Abrams, Esq.
Susan Buckley, Esq.
Tammy L. Roy, Esq.
fabrams@cahill.com
sbuckley@cahill.com
troy@cahill.com
*Counsel for Defendant The McGraw-Hill Companies, Inc.*

Joshua M. Rubins, Esq.
James J. Coster, Esq.
James Regan, Esq.
jrubins@ssbb.com
jcoster@ssbb.com
jregan@ssbb.com
*Counsel for Defendants Moody's Corporation and Moody's Investors Services, Inc.*

Dean J. Kitchens, Esq.
Robert F. Serio, Esq.
Zachary S. Taylor, Esq.
dkitchens@gibsondunn.com
rserio@gibsondunn.com
ztaylor@gibsondunn.com
*Counsel for Defendants J.P. Morgan Securities, Inc. and J.P. Morgan Chase & Co.*

/s/ William J. Wyrick
William J. Wyrick

81107435.1